IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GARY LAWTON DONOHOO II, | * |
| | * |
|     Plaintiff, | * |
| | * |
| vs. | * CIVIL ACTION NO. 24-00033-KD-B |
| | * |
| UNLIMITED DELIVERIES LLC, | * |
| | * |
|     Defendant. | * |

**REPORT AND RECOMMENDATION**

This action is before the Court on Plaintiff Gary Lawton Donohoo II's motion to remand (Doc. 5). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Plaintiff's motion to remand be **GRANTED**.

    I.    **BACKGROUND**

This personal injury action arises from a December 2021 motor vehicle accident on Interstate 65 in Mobile, Alabama. On September 27, 2023, Plaintiff Gary Lawton Donohoo II ("Donohoo") commenced this action by filing a complaint against Defendant Unlimited

Deliveries LLC ("Unlimited")[1] in the Circuit Court of Mobile County, Alabama. (Doc. 1-2 at 3-8). Unlimited filed an answer to Donohoo's complaint, after which Donohoo filed three amended complaints. (Id. at 42-51, 57-70, 75-81). Donohoo's third amended complaint is the operative pleading before the Court.

In his operative complaint, Donohoo alleges that on December 11, 2021, a commercial truck owned by Unlimited and operated by its employee, Luckie Williams,[2] within the line and scope of his employment with Unlimited, crashed into the vehicle driven by Donohoo. (Id. at 77). The complaint states that "[a]s a direct result of the high-energy crash," Donohoo "was caused to suffer significant personal injuries and other damages." (Id. at 78). Donohoo asserts claims against Unlimited for negligence and wantonness. (Id. at 78-80). For relief, he seeks "compensatory damages in amounts deemed appropriate by the jury, plus interest and costs." (Id. at 79-80).

---

[1] Donohoo also sued numerous fictitious defendants, "a practice which is allowed under the [Alabama] state procedural rules" but "is not generally recognized under the Federal Rules of Civil Procedure." Collins v. Fingerhut Companies, Inc., 117 F. Supp. 2d 1283, 1283 n.1 (S.D. Ala. 2000); see also 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."). Because this case is due to be remanded, it is recommended that no action be taken as to the fictitious defendants.

[2] The driver of the truck, Luckie Williams, is not a party to this action. (See Doc. 1-2 at 75-81).

On December 5, 2023, Unlimited served Donohoo with interrogatories and requests for production. (Id. at 55-56). On January 8, 2024, Donohoo served responses to Unlimited's discovery requests. (Id. at 84-85).

After receiving Donohoo's discovery responses, Unlimited removed this action to federal court on February 5, 2024. (Doc. 1). In the notice of removal, Unlimited asserts that this case "falls under this Court's original jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and is one that may be removed to this Court by Unlimited in accordance with the provisions of 28 U.S.C. § 1441 because (1) it is a civil action where the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and (2) Unlimited is completely diverse from Plaintiff." (Id. at 1-2). With respect to citizenship, Unlimited contends that "there is complete diversity between Plaintiff (an Alabama citizen) and Unlimited (a Florida or possible Mississippi citizen)." (Id. at 5). As to the amount in controversy, Unlimited asserts that this action became removable upon service of Donohoo's discovery responses on January 8, 2024, which listed Donohoo's injuries and disclosed medical expenses totaling $39,405.75 plus "out of pocket" expenses totaling $1,831.80. (Id. at 6-8). Per the notice of removal:

> In light of Plaintiff's medical specials (nearly $40,000.00 and apparently still climbing), along with his claims for pain and suffering and mental

3

> anguish/emotional distress, Plaintiff's discovery responses unambiguously establish that the jurisdictional threshold of $75,000.00, exclusive of interest and costs, is met here. In addition, because Unlimited did not receive these "other papers" [until] January 8, 2024, removal is therefore timely pursuant to 28 U.S.C. § 1446(b)(3).

(Id. at 8).

On February 29, 2024, Donohoo filed the instant motion to remand this action to state court. (Doc. 5). Donohoo does not dispute that this action is between citizens of different states, but he argues that Unlimited failed to meet its burden of establishing that the amount in controversy exceeds $75,000. (See id.). Specifically, Donohoo contends that "it is not 'readily deducible' from" his discovery responses "that the amount in controversy exceeds $75,000, and any determination to that effect would be speculative." (Id. at 5-6). Unlimited filed a response in opposition to the motion to remand (Doc. 7), and Donohoo filed a reply. (Doc. 9). Having been fully briefed, the motion to remand is ripe for resolution.

## II. LEGAL STANDARDS

"On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." Univ. of S. Ala. v. Am.

4

Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." Id.

A defendant may remove a case from state to federal court if the case could have been brought in federal court in the first instance. See 28 U.S.C. § 1441(a). This includes actions where the federal court has jurisdiction under 28 U.S.C. § 1332(a), which requires complete diversity of citizenship between the plaintiff and defendant and an amount in controversy that exceeds $75,000, exclusive of interest and costs. See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001); 28 U.S.C. § 1332(a).

"The removal procedure statute contemplates two ways that a case may be removed based on diversity jurisdiction." Jones v. Novartis Pharms. Co., 952 F. Supp. 2d 1277, 1281 (N.D. Ala. 2013). "The first way (formerly referred to as 'first paragraph removals') involves civil cases where the jurisdictional grounds for removal are apparent on the face of the initial pleadings." Id. at 1281-82 (citing 28 U.S.C. § 1446(b)(1)). "The second way (formerly referred to as 'second paragraph removals') contemplates removal where the jurisdictional grounds later become apparent through the defendant's receipt of 'an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.'" Id. at 1282 (quoting 28 U.S.C. § 1446(b)(3)). The removal procedure statute expressly provides

that discovery responses "can constitute 'other paper' from which diversity jurisdiction can be established." Griffith v. Wal-Mart Stores E., L.P., 884 F. Supp. 2d 1218, 1223-24 (N.D. Ala. 2012) (citing 28 U.S.C. § 1446(c)(3)(A)).

Unlimited removed this action pursuant to 28 U.S.C. § 1446(b)(3) within thirty days after receiving "other paper" from Donohoo – the January 8, 2024 discovery responses – "from which [Unlimited contends] it [could] first be ascertained that the case is one which is or has become removable." (See Doc. 1 at 1, 6); 28 U.S.C. § 1446(b)(3). When assessing removal based on a later received paper under § 1446(b)(3), a court must "evaluate 'the . . . later received paper [from the plaintiff]' and the notice of removal to determine whether the amount in controversy is unambiguously established." Sullins v. Moreland, 511 F. Supp. 3d 1220, 1224 (M.D. Ala. 2021) (quoting Lowery v. Ala. Power Co., 483 F.3d 1184, 1213 (11th Cir. 2007)). "The 'jurisdictional amount' must be 'stated clearly on the face of the documents before the court, or readily deducible from them.'" Allen v. Thomas, 2011 U.S. Dist. LEXIS 5969, at *11, 2011 WL 197964, at *4 (M.D. Ala. Jan. 20, 2011) (quoting Lowery, 483 F.3d at 1211); see also Thornton v. United Am. Ins. Co., 2019 U.S. Dist. LEXIS 89551, at *5, 2019 WL 2321188, at *2 (M.D. Ala. May 29, 2019) ("To [unambiguously establish federal jurisdiction] in cases removed based on diversity jurisdiction, the 'jurisdictional amount' must

6

be 'stated clearly on the face of the documents before the court, or readily deducible from them.'") (quoting Lowery, 483 F.3d at 1211).³

The amount in controversy "is less a prediction of 'how much the plaintiffs are ultimately likely to recover,' than it is an

---

³ The undersigned "recognizes a 'flux' within the Eleventh Circuit over the proper application of Lowery's 'unambiguously establish' standard versus the 'preponderance of the evidence' standard." See, e.g., Smith v. GEICO Gen. Ins. Co., 2019 U.S. Dist. LEXIS 232442, at *13 n.4, 2019 WL 9467927, at *5 n.4 (M.D. Fla. Jan. 11, 2019); Heath v. ILG Techs., LLC, --- F. Supp. 3d ----, 2020 U.S. Dist. LEXIS 219933, at *13, 2020 WL 6889164, at *4 (N.D. Ga. Nov. 24, 2020) (noting that "[d]istrict courts have struggled with the simultaneous application of the preponderance of the evidence and 'unambiguously establish' standards from Lowery" and concluding "that the 'unambiguously establish' standard applies to the evidence considered by the preponderance of the evidence standard"); Musgrove v. Kellogg Brown & Root, LLC, 2013 U.S. Dist. LEXIS 61161, at *12, 2013 WL 1827583, at *3 (S.D. Ala. Apr. 29, 2013) (Steele, J.) (holding that the "preponderance of the evidence" standard set out in the 2011 amendment to the removal procedure statute "applies to second paragraph removals"); Gallion v. Zoe's Rests., LLC, 524 F. Supp. 3d 1236, 1242 (concluding that the removing defendant "must unambiguously establish the jurisdictional amount in controversy by a preponderance of the evidence" in a § 1446(b)(3) removal based on the receipt of "other paper"). However, because most district courts within the Eleventh Circuit apply the Lowery standard for a § 1446(b)(3) removal and the parties do not argue that a different standard applies, the Court will apply the Lowery standard. See, e.g., Burrows v. State Farm Mut. Auto. Ins. Co., 2018 U.S. Dist. LEXIS 49656, at *3 n.3, 2018 WL 1470168, at *1 n.3 (M.D. Fla. Mar. 26, 2018) (recognizing that the majority of district courts within the Eleventh Circuit still apply Lowery for a § 1446(b)(3) removal; Advantage Med. Elecs., LLC v. Mid-Continent Cas. Co., 2014 WL 1764483, at *4 (S.D. Ala. May 5, 2014) (Granade, J.) (agreeing "with the weight of authority in this circuit . . . that the analysis set forth in Lowery still applies to [§ 1446(b)(3)] cases") (quotation omitted); Smith, 2019 U.S. Dist. LEXIS 232442, at *13 n.4, 2019 WL 9467927, at *5 n.4 (stating that "the Court will apply the Lowery standard and the weight of authority supports this position").

7

estimate of how much will be put at issue during the litigation; in other words, the amount is not discounted by the chance that the plaintiffs will lose on the merits." S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1315 (11th Cir. 2014) (citations omitted).  "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010).  Courts "may use 'deduction, inference, or other extrapolation' to determine whether the relevant evidence submitted by the removing party supports the existence of the required amount in controversy." Sullins, 511 F. Supp. 3d at 1224 (quoting Pretka, 608 F.3d at 753). Courts may also rely on their "judicial experience and common sense" in determining whether a claim satisfies the amount in controversy requirement. Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1064 (11th Cir. 2010).  However, courts "may not speculate or divine 'by looking at the stars' the amount in controversy." Sullins, 511 F. Supp. 3d at 1224 (quoting Pretka, 608 F.3d at 753).

### III. **DISCUSSION**

Unlimited's removal is premised on diversity jurisdiction under 28 U.S.C. § 1332(a).  There is no dispute that Donohoo and Unlimited are citizens of different states.  There is also no dispute that Donohoo's discovery responses may qualify as "other paper" under § 1446(b)(3).  See 28 U.S.C. § 1446(c)(3)(A);

Griffith, 884 F. Supp. 2d at 1223-24. The only issue for the Court to resolve is whether Donohoo's discovery responses and the notice of removal unambiguously establish that the amount in controversy exceeds $75,000, exclusive of costs and interest. See Sullins, 511 F. Supp. 3d at 1224; Lowery, 483 F.3d at 1213.

The notice of removal reflects that Donohoo served responses to Unlimited's first set of interrogatories and requests for production of documents on January 8, 2024. (Doc. 1-2 at 84-85; Doc. 1-5). Unlimited's interrogatory #12 requested the following information:

> Please state and list each and every injury, whether physical or mental, which you are claiming to be a result of the Incident made the basis of this lawsuit, specifying the part of your body that was injured, the nature of the injury, and, as to any injuries you contend are permanent, the effects on you that you claim are permanent.

(Doc. 1-5 at 4). Donohoo responded, in pertinent part:

> I sustained a fractured nose, C2 fracture/ Type 3 odontoid fracture, hematoma anterior to odontoid. I suffered a ligament tear at the level of C 1-4 and dissention in the carotid artery. I have panic attacks along with emotional stress from injury due to pain and immobility at the time of the wreck. I deal with daily pain in my neck and loss of ability to turn my neck to the left of my shoulders.

(Id.).

Unlimited's interrogatory #13 asked Donohoo to "state and list each and every bill or expense of any nature whatsoever that

9

you are claiming you incurred as a result of the Incident made the basis of this lawsuit." (Id. at 5). Donohoo responded:

> As of the date of this filing, Plaintiff's medical specials are as follows:
>
> | Provider | Total Charges |
> |---|---|
> | Mobile FR | $724.00 |
> | USA | $19,687.75 |
> | USA Phys. Billing. | $5,920.00 |
> | USA NEURO | $11,840.00 |
> | IMC | $242.00 |
> | Springhill Physicians | $375.00 |
> | GACEK | $617.00 |
> | Totals | $39,405.75 |
>
> Plaintiff will supplement this response as treatment continues and discovery progresses.

(Id.).

Unlimited's interrogatory #20 asked Donohoo to "list each and every item and the amount of all out-of-pocket expenses that you claim to have incurred as a result of the Incident and/or the allegations in your Complaint." (Id. at 7). Donohoo responded: "Please see the attached receipts . . . . These documents contain Plaintiff's out of pocket expenses which total $1,831.80." (Id.).[4]

Unlimited asserts that given Donohoo's "medical specials (nearly $40,000.00 and apparently still climbing)," his "$1,831.80 in 'out of pocket expenses,'" and his "claims for pain and suffering and mental anguish/emotional distress" based on the

---

[4] Donohoo also stated in his interrogatory responses that he is *not* making claims for lost wages, loss of future earnings, or diminished earning capacity. (Doc. 1-5 at 8).

10

listed injuries, Donohoo's "discovery responses unambiguously establish" that the amount in controversy exceeds $75,000, exclusive of costs and interest. (Doc. 1 at 7-8). In the motion to remand, Donohoo contests Unlimited's assertion and makes two primary arguments in favor of remand. (See Doc. 5). First, he contends that the description of his injuries and damages claimed in response to interrogatory #12 is "conclusory" and does not constitute clear evidence that the jurisdictional requirement is met. (Id. at 2). Second, Donohoo asserts that his medical expenses are insufficient to establish the amount in controversy, especially since he has no claim for punitive damages and has a subrogation lien of only $15,556.81. (Id. at 4-5).

To begin with the latter argument, the Court notes that Donohoo's interrogatory response characterizes his medical bills as "medical specials"[5] (Doc. 1-5 at 5), indicating that there is in fact a direct correlation between the medical bill totals and the damages for which he seeks recovery. See Larousse v. Hammond, 2018 U.S. Dist. LEXIS 61495, at *8-9 & n.7, 2018 WL 1956121, at *4 & n.7 (S.D. Ala. Apr. 10, 2018) (noting that "Alabama law would still allow [a plaintiff] to recover the full amount of [his

---

[5] Special damages – "[o]ften shortened to specials" - are "[d]amages that are alleged to have been sustained in the circumstances of a particular wrong. To be awardable, special damages must be specifically claimed and proved." Black's Law Dictionary (11th ed. 2019).

medical expenses and the value of his totaled vehicle], not just the amounts left over after insurance payments"), report and recommendation adopted, 2018 U.S. Dist. LEXIS 69461, 2018 WL 1952526 (S.D. Ala. Apr. 25, 2018).  Indeed, Donohoo seems to concede in his reply brief that the full amount of his "medical specials" may be considered in analyzing the amount in controversy, although he argues that his "remaining claims" do not bridge the gap between those "'certain figure' amounts" and the $75,000 jurisdictional threshold.  (See Doc. 9 at 2).

As Donohoo apparently now acknowledges, the "certain figure" amounts known to Unlimited at the time of removal (i.e., Donohoo's "medical specials" and "out of pocket expenses") total $41,237.55. Thus, in order to cross the jurisdictional threshold, the value of Donohoo's remaining claims for bodily injuries, pain and suffering, mental anguish, and emotional distress must total at least $33,762.46.  Unlimited contends that given Donohoo's "description of his injuries, such a determination does not require speculation or guesswork."  (Doc. 7 at 4).  In contrast, Donohoo maintains that any determination that his "remaining claims" total $33,762.46 "would be based solely in speculation."  (Doc. 9 at 2).

The Court notes as a preliminary matter that Donohoo is not bringing claims for lost wages, loss of future wages, or diminished earning capacity, nor is there any indication that he is claiming property damage to his vehicle.  (See Doc. 1-2 at 76-80, Doc. 1-5

12

at 7-8, 13). Furthermore, there is no evidence that Donohoo's medical expenses at the time of removal exceeded the amount listed in his interrogatory response. And, although Donohoo's answer vaguely implied that his treatment was continuing and he would incur medical expenses in the future (see Doc. 1-5 at 5), the Court has no information as to the nature, extent, or likely cost of any such treatment. Therefore, the unspecified cost of Donohoo's unknown or future medical expenses is too speculative to include in the Court's calculation of the amount in controversy. See, e.g., Newbolds v. Amica Mut. Ins. Co., 2019 U.S. Dist. LEXIS 34447, at *3-4, 2019 WL 1035854, at *1 (M.D. Fla. Mar. 5, 2019) (finding that "the unspecified cost" of plaintiff's "hypothetical future medical expense is too speculative to include in the Court's jurisdictional discussion"); Spence v. Fam. Dollar Stores of Ga., LLC, 2021 U.S. Dist. LEXIS 120586, at *6, 2021 WL 2660145, at *3 (N.D. Ga. June 29, 2021) ("That Plaintiff may, on some unknown date in the future, receive medical treatment is too speculative to find that this action surpasses the jurisdictional threshold.").

Both counts in Donohoo's operative complaint – for negligence and wantonness – contain identical *ad damnum* clauses demanding judgment "for compensatory damages in amounts deemed appropriate by the jury, plus interest and costs." (Doc. 1-2 at 79-80). Although wantonness is subject to punitive damages, Donohoo does

13

not request punitive damages in connection with his wantonness claim. (Id. at 80). Notwithstanding the foregoing, Unlimited argues that Donohoo's allegations of wantonness mean that "the damages should be greater and . . . the [injuries] could have been prevented." (Doc. 7 at 6 (citation omitted)). However, Unlimited does not explain how Donohoo's allegations of wantonness, in the absence of a corresponding claim for punitive damages, increase the amount in controversy. Nor has Unlimited offered any authority indicating that punitive damages are necessarily at issue merely by virtue of Donohoo's wantonness claim, regardless of the contents of the relevant *ad damnum* clause. See Hooks v. Assocs. Fin. Servs. Co., 966 F. Supp. 1098, 1101 n.2 (M.D. Ala. 1997) ("Alabama cases have indicated that a jury may not award punitive damages unless they are requested by the plaintiff.") (citing Collins v. Shelley, 514 So. 2d 1358, 1361 (Ala. 1987)). Even assuming *arguendo* that punitive damages may be available, the Court cannot estimate the potential value of such damages without engaging in pure speculation. Unlimited has offered nothing that would assist the Court in assigning even a ballpark value to Donohoo's punitive damages claims, to the extent they exist. The allegations of wantonness in Donohoo's complaint are perfunctory at best, and there is nothing in the attachments to the notice of removal that would suggest that Unlimited or its employee acted wantonly in connection with the subject accident. Consequently, Donohoo's

14

wantonness claim does little, if anything, to bridge the gap between his quantified damages and the jurisdictional minimum.

That leaves Donohoo's "verified description of injuries and claims of mental anguish, emotional distress, and pain and suffering" to make up the shortfall between Donohoo's $41,237.55 in past medical and out-of-pocket expenses and the jurisdictional threshold. Unlimited contends that this information is sufficient to bridge the gap and push the amount in controversy beyond $75,000 (Doc. 7 at 6), while Donohoo asserts that the "value of any remaining claims cannot be ascertained by the removal documents." (Doc. 9 at 2).

Though it is a close question, the undersigned concludes that the leap Unlimited asks the Court to make in this case is simply too great. The physical injuries listed by Donohoo are unquestionably serious, and Donohoo did assert that he "deals with daily pain in [his] neck and loss of ability to turn [his] neck to the left of [his] shoulders," as well as "panic attacks along with emotional stress" as a result of the accident. (See Doc. 1-5 at 4). However, the list of Donohoo's injuries is not sufficiently detailed and does not catalog harm that is severe enough on its face for the Court to find without speculating that the amount in controversy exceeds $75,000. Notably, there is little if any detail or context regarding the extent or severity of the listed injuries, the impact of the injuries on Donohoo, the treatment

15

required for the injuries, and Donohoo's course of recovery.  There is also no assertion that any of the injuries listed were permanent or disabling, and the interrogatory responses reflect that Donohoo maintained his employment following the accident.  The lack of information regarding the severity and impacts of Donohoo's listed injuries hinders the Court's ability to determine, without engaging in speculation and guesswork, that the jurisdictional threshold is exceeded under the circumstances of this case.

Because it is not readily deducible from Donohoo's discovery responses and the notice of removal that the amount in controversy exceeded $75,000 at the time of removal, the Court finds that Unlimited has not met its burden of establishing the existence of federal diversity jurisdiction.  Accordingly, the undersigned submits that Donohoo's motion to remand should be granted.

### IV. <u>CONCLUSION</u>

For the reasons stated above, it is recommended that Donohoo's motion to remand (Doc. 5) be **GRANTED**, and that this action be **REMANDED** to the Circuit Court of Mobile County, Alabama.

### <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  <u>See</u> 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **12th** day of **April, 2024.**

                                                   **/s/ SONJA F. BIVINS**
                                          **UNITED STATES MAGISTRATE JUDGE**